IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | Case No. 21 CR 164 |
| ) | |
| EDWARD PRICE ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

A federal statute, 18 U.S.C. § 922(g)(1), criminalizes the possession of a firearm by a convicted felon. Defendant Edward Price has filed a motion to dismiss the indictment in this case, which charges him with violating section 922(g)(1). He argues that this statute, on its face and as applied to him, violates the Second Amendment's guarantee of his right to bear arms as articulated by the United States Supreme Court in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). The Court denies the motion to dismiss for the reasons set forth below.

### Background

Price has a criminal record that includes six prior felony convictions. Three of those convictions involved narcotics offenses, and the other three involved Price's violation of sex offender registration requirements. Price's sex offender registration requirement was triggered by a juvenile court proceeding brought against him at age 13 in which he was adjudicated delinquent for criminal sexual assault.

On January 3, 2021, Price was pulled over by Chicago police officers for allegedly running a red light. During the stop, the officers recovered a loaded firearm

from Price's sweatshirt pocket. On March 3, 2021, a federal grand jury returned an indictment against Price charging him with possession of a firearm by a convicted felon in violation of section 922(g)(1).

On December 22, 2022, Price filed a motion to dismiss the indictment. He contends that section 922(g)(1) is unconstitutional on its face and as applied to him as a nonviolent felon because the government cannot make the affirmative showing required by *Bruen* that the statute is part of the nation's historical tradition of limiting non-violent felony offenders' right to bear arms. His challenge follows in the wake of dozens of similar challenges around the country, including some in this district.[1] Virtually every district court to decide this issue has rejected the constitutional challenge.

## Discussion

The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Bruen*, the Supreme Court rejected the means-end standard long used by courts of appeal to evaluate firearm restrictions under the Second Amendment. The Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen,* 142 S. Ct. at 2129-30. When the Second Amendment's plain text protects certain conduct, the burden shifts to the government to "demonstrate that the regulation

---

[1] *See United States v. Detonya Garrett*, No. 18 CR 880, Dkt. no. 144 (N.D. Ill. Jan. 11, 2023); *United States v. John Seiwert*, No. 20 CR 443, Dkt. no. 89 (N.D. Ill. Sept. 28, 2022); *United States v. Heriberto Carbajal-Flores*, No. 20 CR 613, Dkt. no. 74 (N.D. Ill. May 6, 2022). The Seventh Circuit heard oral arguments on this issue in *Atkinson v. Garland*, No. 22-1557 (7th Cir.), on November 8, 2022 but has not yet issued a decision.

is consistent with this Nation's historical tradition of firearm regulation." *Id*. at 2126. If the government cannot demonstrate the existence of a historical tradition that would support applying the regulation to the conduct at issue, a court must conclude that the conduct is protected because it falls within the Second Amendment's "unqualified command." *Id*.

Prior to *Bruen*, the Supreme Court determined, in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that "the right secured by the Second Amendment is not unlimited," *id*. at 626, and extends only to "law-abiding, responsible" citizens who keep or bear arms for "lawful purposes." *Id*. at 635. *Heller* contemplated that certain citizens were "disqualified" from keeping or bearing arms under the Second Amendment. *Id*. at 635 ("*Assuming that Heller is not disqualified from the exercise of Second Amendment rights*, the District must permit him to register his handgun and must issue him a license to carry it in the home.") (emphasis added). The Court made it clear that "nothing in [its] opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons," *id*. at 626-27, which the Court said are "presumptively lawful." *Id.* at 627 n.26. The Court reiterated this admonishment in *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons[.]" (internal quotation marks omitted)).

Applying *Heller*, in *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019), the Seventh Circuit rejected the precise argument advanced here by Price. In *Kanter*, the Seventh Circuit found section 922(g)(1) constitutional, finding the prohibition on the possession of firearms by felons—even those convicted of nonviolent felonies—to be presumptively

3

lawful and substantially related to the important governmental objective of reducing gun violence. *Kanter*, 919 F.3d at 448. The court also rejected the suggestion, also made by Price, that dangerousness assessments of felons appropriately should be made on an individualized basis. The court stated that this "highly-individualized approach" was "'a function best performed by the Executive, which, unlike courts, is institutionally equipped for conducting a neutral, wide-ranging investigation.'" *Id*. at 450 (quoting U.S. v. Bean, 537 U.S. 71, 77 (2002)).

These principles set by the Supreme Court in *Heller* and *McDonald*, and which the Seventh Circuit applied in *Kanter*, were left intact by *Bruen*. Price's argument seeks to separate *Bruen* from its factual context, which involved whether New York state could constitutionally "disarm *law-abiding* citizens" who carry firearms for self-defense. *Bruen*, 142 S. Ct. at 2133 (emphasis added). In answering this question, *Bruen* did not depart from *Heller's* framework that the right to bear arms belongs only to "law-abiding, responsible citizens." 142 S. Ct. at 2131 (quoting *Heller*, 554 U.S. at 635). Indeed, the majority used the phrase "law-abiding" to describe "the people" whose rights the Second Amendment guarantees no fewer than fourteen times, including in its concluding paragraph:

> New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents *law-abiding citizens with ordinary self-defense needs* from exercising their right to keep and bear arms. We therefore reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*Id*. at 2156 (emphasis added). Moreover, Justice Kavanaugh's concurrence repeats the Supreme Court's reassurances from *Heller* and *McDonald* regarding the presumptive constitutionality of felon dispossession laws. *Id*. at 2162. And Justice Alito's

4

concurrence characterizes the Supreme Court's narrow holding as deciding only that "a State may not enforce a law . . . that effectively prevents its *law-abiding* residents from carrying a gun" for the purpose of self-defense, and "nothing about who may lawfully possess a firearm." *Id*. at 2157 (emphasis added). Finally, the Court stated that "nothing in [the Court's] analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes" which necessarily require applicants to show that they are "law-abiding, responsible citizens." *Id*. at 2138 n.9 (internal citations omitted).

The government argues that those charged under section 922(g)(1), by definition, are not law-abiding citizens but rather are among the classes of individuals whose rights to bear arms historically have been restricted for public safety. The Court agrees with the government. Section 922(g)(1) is a constitutional restriction on firearms possession because convicted felons—whether their underlying felony was violent or not[2]—are, by definition, not law-abiding and therefore do not fall within the textual purview of the Second Amendment.

Prior to *Bruen*, the Seventh Circuit noted in *Kanter* that "relying on the 'presumptively lawful' language in *Heller* and *McDonald*, every federal court of appeals to address the issue has held that § 922(g)(1) does not violate the Second Amendment on its face." *Kanter*, 919 F.3d at 442.[3] The court further noted that "[t]he Fifth, Sixth,

---

[2] The Court notes, however, that Price's narcotics-related convictions are indicative of dangerous activity. *United States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011) ("[d]rug crimes are associated with dangerous and violent behavior and warrant a higher degree of precaution").

[3] In *Range v. Attorney General*, 53 F.4th 262 (3d Cir. 2022), the Third Circuit also relied on this language to uphold the constitutionality of section 922(g)(1) post-*Bruen*. On

5

Ninth, Tenth, and Eleventh Circuits have suggested that § 922(g)(1) is always constitutional as applied to felons as a class, regardless of their individual circumstances or the nature of their offenses," and that although the Fourth, Eighth, and D.C. Circuits—along with the Seventh Circuit itself at that point—had "left room for as-applied challenges to the statute," none had ever actually upheld such a challenge. *Id.*

Price stakes much of his claim on discussion in the dissenting opinions in *Kanter* and *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010), expressing doubt that history supports the categorical disqualification of felons convicted of nonviolent offenses from possessing firearms. But not only are those dissenting opinions not binding, they are contrary to the controlling law of this circuit upholding the categorical convicted felon firearms ban in section 922(g). *See Skoien*, 614 F.3d at 640 (law disqualifying domestic violence misdemeanants from firearms possession did not run afoul of *Heller* because "statutory prohibitions on the possession of weapons by some persons are proper"); *see also*, *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010) (upholding section 922(g)(1)'s categorical ban on firearm possession by convicted felons); *Hatfield v. Barr*, 925 F.3d 950, 953 (7th Cir. 2019) (section 922(g)(1) does not violate the Second Amendment as applied to felon convicted of non-violent crime).

Though the Seventh Circuit has not definitively decided whether felons were historically outside the scope of the Second Amendment's protection, it has suggested "that felons were not historically understood to have Second Amendment rights." *Kanter,* 919 F.3d at 445. And in *Skoien*, the Seventh Circuit stated that some

---

January 6, 2023, the Third Circuit granted a petition for rehearing *en banc* and vacated the panel opinion.

6

"categorical limits" on firearm possession were "part of the original meaning" of the Second Amendment. *Skoien*, 614 F.3d at 640. In *United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010), the court similarly stated that "most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens," including felons. *Id*. at 684-85 (internal quotation marks omitted).

Courts in this district—and all those identified by the government in footnote 4 of its response—have also held, post-*Bruen*, that the plain text of the Second Amendment does not cover the possession of firearms by individuals who are not law-abiding. *See Seiwert*, 2022 WL 4534605 at *2 (unlawful users of controlled substances fall outside the Second Amendment's protection as they are not law-abiding); *Garrett*, 2023 WL 157961at *3-4 (the Seventh Circuit's pre-*Bruen* caselaw holds that § 922(g) is constitutional in light of *Heller* and *McDonald's* prohibition against the use or possession of firearms by non-law-abiding citizens, and "*Bruen* does not disturb that conclusion" because it did not abrogate or otherwise suggest that this longstanding prohibition is no longer lawful).

To the Court's knowledge, only one federal court of appeals has reached an arguably contrary conclusion post-*Bruen*. In *United States v. Rahimi*, No. 21-11001, 2023 WL 1459240 (5th Cir. Feb. 2, 2023), the Fifth Circuit held that the possession of a pistol and a rifle by a defendant, while he was subject to domestic violence restraining order, fell within purview of Second Amendment, and thus, the Second Amendment

7

presumptively protected his right to possess those weapons.[4] In reaching this conclusion, the Fifth Circuit referred to the "law-abiding, responsible citizen" or "ordinary, law-abiding citizen" constraint on the Second Amendment that many courts have relied on as an "implied gloss" that does not actually limit the Amendment's reach. *Rahimi*, 2023 WL 1459240 at *4. But the court in *Rahimi*, in the same paragraph, seemingly acknowledged that the "law-abiding citizen" language used in *Heller* and then *Bruen did* mean to exclude "groups that have historically been stripped of their Second Amendment rights" by "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings . . . ." *Id.* (quoting *Heller*, 544 U.S. at 626–27). The court also acknowledged that "[t]here is some debate on this issue." *Rahimi*, 2023 WL 1459240 at *3. In sum, both *Bruen* and *Rahimi* recognize that the right to keep and bear arms is subject to some reasonable restrictions. *Bruen*, 142 S. Ct. at 2131, 2156-57, 2162.

Price suggests that there is no basis to apply a different rule to convicted felons in the context of the Second Amendment than courts do in the context of the First or Fourth Amendments, citing *United States v. Meza-Rodriguez*, 798 F.3d 664 (7th Cir. 2015), in support. *Id*. at 669 (expressing reluctance to "place more weight on [] passing references [to law-abiding citizens] *than the Court itself did*.") (emphasis added). But as *Meza-Rodriguez* itself notes in this passage, the Supreme Court did, in *Heller,* place weight on this language in reaching its decision. Second, this argument ignores

---

[4] The Court notes that *Rahimi* is distinguishable from this case because unlike the felony convictions underlying a section 922(g)(1) violation, the underlying offense in *Rahimi* was subject merely to civil process.

differences between the rights protected by the First and Second Amendments, as the exercise of rights under the First Amendment do not put at risk the physical safety of others. That, in the Court's view, is an appropriate basis to "apply a different rule" to the Second Amendment than to the First or Fourteenth. Def.'s Mot. to Dismiss at 12. Section 922(g)(1) "comports with legislatures' longstanding authority and discretion to disarm citizens unwilling to obey the government and its laws." *Range*, 53 F.4th at 273.

Because the Second Amendment's plain text does not cover the possession of a firearm by a felon, the Court need not determine whether the government has demonstrated that section 922(g)(1) is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.[5] Section 922(g)(1) is constitutional on its face and as applied to Price, and nothing in *Bruen* disturbs that conclusion.

## Conclusion

For the reasons stated above, the Court denies Price's motion to dismiss the indictment [dkt. no. 111]. The time between today's date and the March 9, 2023 status hearing is excluded under 18 U.S.C. § 3161(h)(7)(A) in the interests of justice due to the need for further preparation due to the Court's denial of the motion to dismiss.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 13, 2023

---

[5] The Supreme Court in *Bruen* also expressly contemplated that step two would be applied only to law-abiding citizens. *Bruen*, 142 S. Ct. at 2133 (instructing that courts must identify historical analogues to modern firearm regulations by assessing "how and why the regulations burden a *law-abiding* citizen's right to armed self-defense.") (emphasis added).